**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| STEPHANE WANTOU, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **MO:24-CV-00216-DC-RCG** |
| | § | |
| WALMART, INC., | § | |
| *Defendant.* | § | |
| | § | |

## <u>REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE</u>

BEFORE THE COURT is Defendant Walmart, Inc.'s ("Defendant") Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 39).[1] This case is before the Court through a Standing Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration of the parties' briefs and the case law, the Court **RECOMMENDS** Defendant's Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 39).

### I.    BACKGROUND

This is an employment discrimination case. Plaintiff Stephane Wantou ("Plaintiff") worked as a Staff Pharmacist and Pharmacy Manager at Defendant's San Angelo and Big Spring locations from May 2016 to February 2024. (Doc. 38 at 11, 19). Plaintiff alleges he is a black, African male, originally from Cameroon, West Africa. *Id.* at 11. In his Complaint, Plaintiff states that from the beginning of his employment with Defendant through June of 2022, he never took leave or requested accommodations. *Id.* at 12. However, Plaintiff alleges after initially requesting and taking leave under the Family and Medical Leave Act ("FMLA") in May 2022, he was treated with "disdain and spite, belittled, disparaged, and scolded by his managers and upper management" for requesting and taking such leave. *Id.* at 12–13.

---

1. All page number citations are to CM/ECF generated pagination unless otherwise noted.

Plaintiff avers his managers were "intent on continuously harassing" him to make him "pay with [his] job for all the FMLA leave [he] had taken," with the hope that it would force him to quit his job on his own. *Id.* at 13. Plaintiff specifically alleges that his managers would force him to work at distant locations on his days off and cut his hours, resulting in reduced pay. *Id.* On or about May 16, 2023, Plaintiff requested—and Defendant approved—additional leave to travel to Cameroon, West Africa, to care for his elderly father. *Id.* at 14. Plaintiff contends that because of this request, he faced a barrage of disparagement and threats from his managers, who allegedly told him he would "pay for all that with [his] job!" *Id.* Due to his father's critical condition, Plaintiff further extended his leave in July 2023, which Defendant again approved. *Id.* Plaintiff further alleges that during his employment with Defendant, he observed his supervisors encourage staff members to contribute monetarily, send gifts, or show support to other staff members when they were unable to work. *Id.* at 15. However, Plaintiff contends managers offered him no support and constantly reminded him he took too much leave and threatened him with ending his employment. *Id.*

On December 28, 2023,[2] Plaintiff requested another extension for his leave of absence through Defendant's Human Resources department, explaining he needed to care for his father and needed accommodation under the Americans with Disabilities Act ("ADA"). *Id.* In response, Human Resources directed Plaintiff to first speak with his supervisor, Mark Gabir ("Gabir"). *Id.* Thereafter, Plaintiff spoke with Gabir and requested accommodations under the ADA. *Id.* at 15–16. Plaintiff alleges Gabir responded by calling him derogatory racial slurs, accusing him of "pretending" to claim rights, and informing him he was terminating his pharmacy manager

---

2. The explicit wording of Plaintiff's Second Amended Complaint states he requested additional leave "[o]n or around December 28, 2024." (Doc. 38 at 15). For purposes of this Motion, however, the Court infers that Plaintiff intended to reference December 28, 2023, consistent with the preceding timeline and his termination in February 2024.

position. *Id.* at 16. Plaintiff claims he was then given until February 2, 2024, to find another position "if he wished to continue as an employee at Walmart." *Id.* Plaintiff states Walmart allows leaves of absence for medical and family care for up to 52 weeks and he was on leave from the end of May of 2023 through the beginning of January 2024—establishing that he was in full compliance with Walmart's policy. *Id.* On January 16, 2024, Plaintiff once more spoke with Gabir requesting accommodations under the ADA. *Id.* Plaintiff alleges Gabir again responded with derogatory racial slurs. *Id* at 16–17. However, Plaintiff asserts just days after, Gabir encouraged Plaintiff to "apply for a relief position." *Id.* at 17. Plaintiff alleges he applied for the position, interviewed with Gabir, and received a text message stating "You should be getting your new job offer this week. Congratulations!!" and "How soon can you start?" *Id.* Plaintiff contends before he could even start, however, he received an email from Defendant rescinding his offer even though Defendant still intended to fill that position. *Id.* at 18. Plaintiff contends this was orchestrated by Defendant "to mask the fact that they did not want to offer accommodation to Plaintiff under the ADA and instead wanted to bring to culmination (by terminating Plaintiff) their continuous retaliatory animus against Plaintiff for the FMLA leave he had taken." *Id.* On or about February 6, 2024, Defendant officially terminated Plaintiff. *Id*. at 19.

Following these incidents, Plaintiff states he called and spoke with a Human Resources employee at Defendant's corporate office but he "was told that the fact that [he] was from Africa and that his parents were overseas, in Africa, and that he had to take care of them was a problem." *Id*. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 17, 2024. *Id.* That same day, the EEOC issued Plaintiff a right-to-sue letter, but Plaintiff contends he received the letter "a few days later." *Id.* Ninety-one days

after issuance of the EEOC right-to-sue letter, Plaintiff filed his Original Petition against Defendant in the District Court for the 118th Judicial District, Howard Country, Texas. (Doc. 1-2). On September 9, 2024, Defendant removed Plaintiff's case to this Court and moved to dismiss for failure to state a claim. (Docs. 1; 3). Following Defendant's First Motion to Dismiss (Doc. 3), Plaintiff filed an Amended Complaint (Doc. 9). Defendant then filed another Motion to Dismiss. (Doc. 11). After seeking leave of Court, Plaintiff filed a Second Amended Complaint. (Doc. 38). Plaintiff asserts causes of action for ADA discrimination, retaliation, and associational-discrimination; FMLA discrimination and retaliation; Title VII discrimination; Section 1981 discrimination; promissory estoppel; fraud; and fraudulent inducement. (Doc. 38).

On March 13, 2025, Defendant filed the instant Motion to Dismiss arguing Plaintiff fails to state a claim as to each cause of action. (Doc. 39). Plaintiff and Defendant timely filed their respective Response and Reply. (Docs. 42; 47). Consequently, the instant matter is ripe for disposition.

## II.   LEGAL STANDARD

### A.  Motion to Dismiss Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain

statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery") (internal quotation marks and citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

## B. Motion to Dismiss Under Rule 9(b)

Federal Rule of Civil Procedure 9(b) governs pleading standards for fraud claims, including state-law fraud claims. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338–39 (5th

Cir. 2008) ("[S]tate-law fraud claims are subject to the pleading requirements of Rule 9(b).") (citing *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 430 (5th Cir. 2002); *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)). Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "What constitutes 'particularity' will necessarily differ with the facts of each case and hence the Fifth Circuit has never articulated the requirements of Rule 9(b) in great detail."

*Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992). The Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.,* 565 F.3d 200, 207 (5th Cir. 2009). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992).

## III. DISCUSSION

### A. Timeliness of Suit

As a preliminary matter, Defendant contends several of Plaintiff's claims are time-barred for failure to file within the limitations period triggered by receipt of his EEOC right-to-sue letter. (Doc. 39 at 5, 9). A plaintiff must file suit within ninety days of receiving a right-to-sue letter from the EEOC. *Henson v. Bell Helicopter Textron, Inc.,* 128 F. App'x 387, 390–91 (5th Cir. 2005). The Fifth Circuit has clarified the ninety-day limitations period begins to run upon

*receipt* of the right-to-sue letter. *See Carrizal v. Brennan*, 834 F. App'x 915, 917–18 (5th Cir. 2020).

Here, Defendant correctly notes the EEOC issued Plaintiff a right-to-sue letter on April 17, 2024, and Plaintiff did not file his Original Complaint until July 17, 2024—ninety-one days later. (Doc. 39 at 5–6). Plaintiff, however, seeks to avoid dismissal by distinguishing between the date of *issuance* and the date of *receipt*. Although Plaintiff initially characterizes the timeline in terms of when he "opened" the letter (Doc. 38 at 6), he later clarifies the EEOC *issued* the letter on April 17, 2024, but he did not actually *receive* it until "a few days later" (Doc. 38 at 19). Because the Fifth Circuit has made clear the ninety-day limitations period runs from receipt of the right-to-sue letter, and because at this stage the Court must accept Plaintiff's allegations as true, construe the Complaint liberally, and resolve ambiguities in his favor, the Court credits Plaintiff's allegation that he received the letter after April 17, 2024.[3] *See Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 251 n.13 (5th Cir. 1997) ("For purposes of rule 12(b)(6), the complaint must be liberally construed in favor of the plaintiff . . . ."); *see also Wells v. Ali*, 304 F. App'x 292, 293 (5th Cir. 2008) (recognizing that ambiguities in the complaint must be resolved in the plaintiff's favor). Accordingly, although Plaintiff filed his Complaint ninety-one days after the letter was *issued*, he alleges it was filed within ninety days of its *receipt*. (Docs. 1-2; 38 at 19). The Court therefore concludes, for purposes of this Motion, Plaintiff timely filed his suit and proceeds to consider whether his claims survive Defendant's Motion to Dismiss.

### B.  Motion to Dismiss Under Rule 12(b)(6)

---

3. The Court notes significant inconsistencies in Plaintiff's own pleadings. For instance, on page six of his Second Amended Complaint, Plaintiff asserts that he filed suit "within ninety (90) days from the date on which Plaintiff **opened** his EEOC Right to Sue Letter," without mentioning any delay in receipt. (Doc. 38 at 6). Yet later in the same Complaint, he alleges he *received* the letter a few days after it was issued. *Id.* at 19. Plaintiff further shifted his position in his Response, claiming he did not receive notice until April 25, 2024, eight days after issuance. (Doc. 42 at 4). Nevertheless, at this stage, the Court must accept his allegations as true. *See Fernandez-Montes*, 987 F.2d at 284.

Defendant moves to dismiss under Rule 12(b)(6) Plaintiff's claims for: (1) ADA discrimination, retaliation, and associational discrimination; (2) FMLA discrimination and retaliation; (3) Title VII and Section 1981 discrimination; and (4) promissory estoppel. (Doc 39). The Court addresses each claim in turn below.

### 1.  Plaintiff's ADA Claims

Plaintiff asserts causes of action under the ADA for associational discrimination, disability-discrimination, and retaliation. (Doc. 38 at 20–21). As Defendant moved to dismiss each of Plaintiff's ADA claims, the Court will take up each claim in turn. (Doc. 39).

### i.  Plaintiff's ADA Associational Discrimination Claim

In its Motion, Defendant argues Plaintiff's associational discrimination claim under the ADA should be dismissed. (Doc. 39 at 7). The ADA prohibits an employer from "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."  42 U.S.C. § 12112(b)(4). The Fifth Circuit has not "explicitly recognized a cause of action for discrimination based on association with a handicapped individual."  *Spencer v. FEI, Inc.*, 725 F. App'x 263, 267 (5th Cir. 2018) (per curiam) (quoting *Grimes v. Wal-Mart Stores Tex., L.L.C.*, 505 F. App'x 376, 380 n.1 (5th Cir. 2013) (per curiam)). The Circuit has however said "[i]f such an action were viable," to establish a prima facie case the plaintiff would have to show: "(1) [his] qualification for the job, (2) an adverse employment action, (3) the employer's knowledge of the employee's disabled relative, and (4) that the adverse employment action occurred under circumstances raising a reasonable inference that the relative's disability

was a determining factor in the employer's adverse action." *Id.* (quoting *Grimes*, 505 F. App'x at 380).

Defendant argues dismissal of Plaintiff's associational discrimination claim is appropriate because "[a]ssociational discrimination . . . has not been recognized by the Fifth Circuit" and this Court "should find that 'no cognizable cause of action for associational discrimination exists in this jurisdiction' and dismiss '[Plaintiff's] ADA claim' with prejudice." (Doc. 39 at 7–8). Plaintiff maintains "the [Fifth] Circuit has enforced the Title I ADA associational discrimination provision" and he has a cause of action because he was terminated due to his association with a person with a disability. (Doc. 42 at 6). Plaintiff further argues "Defendant does not dispute that [he] has made a prima facie showing on associational discrimination" contending "Defendant effectively concedes Plaintiff has made a prima facie showing on associational discrimination." (Doc. 42 at 8). In response, Defendant argues that assuming such a cause of action exists, it does not concede that Plaintiff has made a prima facie showing of associational discrimination because "Plaintiff has not sufficiently alleged the prima facie elements of an 'associational discrimination' claim." (Doc. 44 at 5).

Although the Fifth Circuit has not explicitly recognized a cause of action for associational discrimination under the ADA, district courts within this Circuit have done so. *See, e.g.*, *Spinks v. Trugreen Landcare, LLC*, 322 F. Supp. 2d 784, 796 (S.D. Tex. 2004); *Moresi v. AMR Corp.*, No. 98-CV-1518, 1999 WL 680210, at *2–*3 (N.D. Tex. Aug. 31, 1999). Even assuming such a claim is cognizable, however, the Court agrees with Defendant that Plaintiff has not adequately pled facts sufficient to support the fourth requirement: "the adverse employment action occurred under circumstances raising a reasonable inference that the relative's *disability* was a determining factor in the employer's adverse action." *Spencer*, 725 F. App'x at 267.

Accepting Plaintiff's version of events, Defendant became frustrated with Plaintiff's use of leave and acted accordingly. *See, e.g.*, Doc. 38 at 12 ("[E]ach time [Plaintiff's FMLA] requests were approved, [his] managers overtly expressed their animus"); *id.* at 13 ("As retribution for Plaintiff having taken FMLA leave, [his] managers and upper managers were intent on continuously harassing [him]"); *id.* at 14 ("Plaintiff faced a barrage of disparagement and threats . . . for the FLMA leave [he] had previously taken"); *id.* at 19 ("[Plaintiff] was told that the fact . . . his parents were overseas . . . and that he had to take care of them was a problem."). Such conduct is not unlawful *under the ADA*. Plaintiff's Second Amended Complaint does not contain any facts indicating his father's disability was a determining factor in his termination. At no point does Plaintiff suggest Gabir or anyone else at Walmart expressed animosity regarding his father's condition or that it played a role in the decision to terminate him. The absence of factual allegations connecting Plaintiff's father's condition to the termination decision is fatal to his ADA associational discrimination claim.

Accordingly, the Court **RECOMMENDS** Defendant's Motion to Dismiss be **GRANTED** as to Plaintiff's ADA associational discrimination claim (Doc. 39), and the claim be **DISMISSED WITHOUT PREJUDICE**.

### ii.  Plaintiff's ADA Disability Discrimination Claim

Defendant further argues Plaintiff's disability discrimination claim under the ADA should be dismissed. (Doc. 39 at 8). Under the ADA, it is unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A claim of discrimination under the ADA requires a plaintiff to allege he: (1) has a disability or

was regarded as disabled; (2) was qualified for the job; and (3) was subject to an adverse employment decision because of his disability. *Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237, 248 (5th Cir. 2025) (citing *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017)). Thus, "[t]o plead a cause of action under the [ADA], a plaintiff must first plausibly allege he is disabled within the meaning of that Act." *Hughes v. Terminix Pest Control, Inc.*, No. 23-30617, 2024 WL 3440465, at *1 (5th Cir. July 17, 2024); *Tyler v. La-Z-Boy Corp.*, 506 F. App'x 265, 267 (5th Cir. 2013) ("As a threshold requirement in an ADA claim, the plaintiff must, of course, establish that he has a disability." (quoting *Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 654 (5th Cir. 2003))). That requires alleging the plaintiff (1) has an impairment that substantially limits a major life activit[y], (2) has a record of such an impairment, or (3) is regarded as having an impairment whether or not the impairment limits or is perceived to limit a major life activity. 42 U.S.C. § 12102. Whether a plaintiff had a disability is assessed at "the time of the adverse employment action." *Dabbasi v. Motiva Enterprises, LLC*, 107 F.4th 500, 508 (5th Cir. 2024) (quoting *Jennings v. Towers Watson*, 11 F.4th 335, 344 (5th Cir. 2021)).

Defendant argues dismissal is appropriate because Plaintiff's ADA disability discrimination claim fails to adequately plead he has a disability for purposes of the ADA. (Doc. 39 at 8). Defendant specifically argues Plaintiff's claim is based entirely on the alleged disability of Plaintiff's family member which is not sufficient to allow Plaintiff's ADA discrimination claim to survive. *Id.* In his Response, Plaintiff maintains his ADA failure-to-accommodate claim regarding his own health is not deficient. (Doc. 42 at 8). Plaintiff brings attention to the fact he "explained to his supervisor that he needed accommodation under ADA due to the toll that Plaintiff's family problems had taken on Plaintiff's own health" and "his

supervisor did not engage in an interactive process to ascertain his health issues and find a solution." *Id.*

The Court finds Plaintiff has failed to allege an ADA claim based on an actual disability. Plaintiff has not sufficiently alleged he has an impairment or a record of an impairment, let alone one that substantially limits a major life activity. Although Plaintiff stated his father's condition was "seriously affecting him" (Doc. 38 at 15), nowhere in his Second Amended Complaint or Response does Plaintiff name, identify, or describe his disability. The only insight Plaintiff provides is that he "needed accommodation under the ADA due to the toll that [his] family problems had taken on [his] own health." *Id.* at 15–16. He also does not allege said health issues affect any major life activity, including any that are specifically listed in the ADA. He thus necessarily cannot allege his disability "substantially limits" any major life activity. Merely asserting he has an unspecified physical disability is insufficient to plausibly allege he is disabled within the meaning of the ADA. *Hughes*, 2024 WL 3440465, at *1; *see, e.g.*, *St. v. Maverick Tube Corp.*, No. 15-CV-02736, 2016 WL 8711338, at *6 (S.D. Tex. June 17, 2016), *R&R adopted*, No. 4:15-CV-2736, 2016 WL 3948106 (S.D. Tex. July 19, 2016) (finding plaintiff had not alleged sufficient facts to show that he had "a disability within the meaning of the ADA" where he did "not claim that his injury is an impairment that 'substantially limits' a 'major life activity.'"). Here, Plaintiff's conclusory allegations that his family problems had taken a toll on his own health are insufficient to state a claim.

Accordingly, the Court **RECOMMENDS** that Defendant's Motion to Dismiss be **GRANTED** as to Plaintiff's ADA disability discrimination claim (Doc. 39), and the claim be **DISMISSED WITHOUT PREJUDICE**.

### iii. Plaintiff's ADA Retaliation Claim

Finally, Defendant argues Plaintiff's retaliation claim under the ADA should be dismissed. (Doc. 39 at 8). Retaliation under the ADA requires that an employee show: (1) he engaged in activity protected by the ADA; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237, 249 (5th Cir. 2025). Here, protected activity includes "oppos[ing] any act or practice made unlawful by [the ADA]." *St. John v. Sirius Sols., LLLP*, 299 F. App'x 308, 309 (5th Cir. 2008) (per curiam) (citing 42 U.S.C. § 12203(a)). To satisfy this requirement, Plaintiff must show that he had a "reasonable belief that the employer was engaged in unlawful employment practices" under the ADA. *DeBlanc v. St. Tammany Par. Sch. Bd.*, 640 F. App'x 308, 313 (5th Cir. 2016) (per curiam); *St. John*, 299 F. App'x at 309. In other words, Plaintiff would need to show that he reasonably believed Defendant engaged in activity that was "unlawful *under the ADA* in order to have engaged in a 'protected' activity." *DeBlanc*, 640 F. App'x at 313.

In this case, Plaintiff fails to allege facts suggesting Defendant engaged in any conduct prohibited by the ADA. Without such a showing, Plaintiff cannot establish he engaged in protected activity capable of supporting a retaliation claim. For instance, as the Court already noted, Plaintiff has not sufficiently alleged illegal disability or associational discrimination by Defendant. In addition, under the ADA:

> [A]n employer need not provide the applicant or employee without a disability with a reasonable accommodation because that duty only applies to qualified applicants or employees with disabilities. Thus, for example, an employee would not be entitled to a modified work schedule as an accommodation to enable the employee to care for a [family member] with a disability.

29 C.F.R. Pt. 1630, App § 1630.8. Consistent with this, the Fifth Circuit has made clear that when an employee is terminated for taking leave to care for a disabled relative—or when an

employer makes disparaging comments about such leave—"such actions are not prohibited under the ADA." *See Besser v. Texas Gen. Land Off.*, 834 F. App'x 876, 887 (5th Cir. 2020).

Accepting Plaintiff's allegations as true, he merely complained of Defendant's criticism of his use of leave to take care of his father. (Doc. 38 at 13–17, 22). He has not alleged he is disabled within the meaning of the ADA, any discriminatory comments or actions regarding his father's condition, or that Defendant's behavior was a result of his father's disability. In other words, it was his use of leave that triggered Defendant's "continuous harassment." (Doc. 38 at 13). Plaintiff's Second Amended Complaint regarding those comments and Defendant's alleged frustration with Plaintiff do not constitute opposition to unlawful activity under the ADA because the ADA does not require employers to accommodate non-disabled workers by restricting their work schedule or allowing them to miss work to care for a disabled relative. 29 C.F.R. Pt. 1630, App § 1630.8. Even accepting as true that Plaintiff was fired for his use of leave, or for opposing comments by Defendant regarding his use of leave, such actions are not prohibited under the ADA, and opposition to those actions cannot constitute protected activity in support of Plaintiff's ADA retaliation claim. *See id.*

Accordingly, the Court **RECOMMENDS** Defendant's Motion to Dismiss be **GRANTED** as to Plaintiff's ADA retaliation claim, (Doc. 39) and the claim be **DISMISSED WITHOUT PREJUDICE**.

### 2. Plaintiff's FMLA Claims

Plaintiff asserts causes of action under the FMLA for retaliation and discrimination. (Doc. 38 at 25). While "technically distinct," FMLA discrimination claims are "substantively identical" to FMLA retaliation claims, and courts generally treat them as interchangeable. *Martin v. Penske Logistics, LLC*, 736 F. Supp. 3d 437, 445 n.1 (N.D. Tex. 2024) (citing *Bocalbos v.*

*Nat'l W. Life Ins.*, 162 F.3d 379, 383 (5th Cir. 1998)); *see Garcia v. Randolph-Brooks Fed. Credit Union*, No. 18-CV-00978, 2019 WL 1643741, at *3 (W.D. Tex. Apr. 16, 2019), *R&R adopted*, 2019 WL 2565270 (W.D. Tex. May 9, 2019) ("Although a plaintiff can technically pursue both an interference and a retaliation claim, where the essence of the two claims is identical, the court may dismiss the duplicative claim."). Thus, the Court treats Plaintiff's FMLA retaliation and discrimination claims as a single cause of action, referring to both claims as simply "FMLA retaliation."

The FMLA generally provides for up to 12 weeks of leave in any 12-month period in order to, among other things, care for a parent. 29 U.S.C. § 2612(a)(1)(C). Under the FMLA, an employer may not "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." *Id.* § 2615(a)(2). The Fifth Circuit has instructed that the approach to FMLA retaliation claims is twofold. *See Ray v. United Parcel Serv.*, 587 Fed. App'x. 182, 187 (5th Cir. 2014). First, a court asks whether the plaintiff has presented direct evidence of relation. *Id.* (citing *Richardson v. Monitronics, Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005). FMLA retaliation claims lacking direct evidence are analyzed under the *McDonnell-Douglas* burden-shifting framework.[4] *Besser*, 834 F. App'x at 882 (applying the *McDonnell-Douglas* framework at the Rule 12(b)(6) stage to assess whether plaintiff plausibly alleged elements of an FMLA retaliation claim absent direct evidence). Accordingly, the Court first considers whether Plaintiff's allegations amount to direct evidence of retaliation.

To constitute direct evidence, the evidence "must be such that, if believed, would prove the existence of a fact . . . without any inferences or presumptions." *Ray*, 587 Fed. App'x. at 187.

---

4. The Fifth Circuit has noted for purposes of surviving a Rule 12(b)(6) motion to dismiss, "an employment discrimination plaintiff need not plead a prima facie case of discrimination," but the Court may consider the *McDonnell-Douglas* framework as a guide for evaluating whether the complaint plausibly alleges facts giving rise to an inference of discrimination. *Puente v. Ridge*, 324 F. App'x 423, 427 (5th Cir. 2009).

Comments can constitute direct evidence where: (1) they are related to the protected class of persons of which the plaintiff is a member; (2) they are proximate in time to the complained-of adverse employment decision; (3) they are made by an individual with authority over the employment decision at issue; and (4) they relate to the employment decision at issue. *Id.* at 196 (citing *Rubinstein v. Adm'rs of Tulane Educ. Fund,* 218 F.3d 392, 401 (5th Cir. 2000)). Comments failing to satisfy these requirements are merely "stray remarks" that are independently insufficient to constitute direct evidence. *Id.* (citing *Jackson v. Cal–W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010)).

In this case, Defendant argues dismissal is appropriate because Plaintiff's FMLA retaliation claim is legally insufficient despite Plaintiff's allegations regarding disparate treatment. (Doc. 39 at 9). Defendant specifically asserts Plaintiff returned to work late November 2022 but was not discharged from his position until "over a year later, on February 6, 2025." *Id*. Plaintiff contends that "even assuming, *arguendo*, that fourteen months had allegedly elapsed between Plaintiff's FMLA leave and Plaintiff's discharge . . ., this would not preclude causality," as "the absence of immediacy between the cause and effect does not disprove causation." (Doc. 42 at 12, 14). Plaintiff further alleges each time he requested FMLA leave his managers "overtly expressed their animus and vowed to Plaintiff that they would make him pay with [his] job for all the FMLA leave [he] had taken." (Doc. 38 at 12). Plaintiff further contends his supervisor, Gabir, explicitly expressed his opposition to his use of FMLA leave. (Doc. 38 at 16). Gabir allegedly felt Plaintiff was not entitled to FMLA benefits, and he was merely "pretending." *Id.* Defendant maintains Plaintiff's Second Amended Complaint contains only conclusional allegations that do not point to any actual connection between his FMLA protected leave and his termination. (Doc. 44 at 7).

Here, taking Plaintiff's allegations as true, the Second Amended Complaint sufficiently alleges clear retaliatory motive on its face without the need for inference. According to Plaintiff, on January 8, 2024, Gabir explicitly told him, "FMLA . . . [is] not for [*******] from Africa like you. [*******] from Africa like you come here and start pretending to rights like FMLA . . . . You can't continue to work here with that sh**expletive**t about your father being sick overseas all the time." (Doc. 38 at 16). Plaintiff claims Gabir then told him "he was terminating [his] Pharmacy Manager position and that [he] had until February 2, 2024, to find another position if he wished to continue as an employee at Walmart." *Id.* Plaintiff further alleges just over a week later, Gabir again told him "FMLA . . . [is] not for [*******] from Africa like you" and said Plaintiff "just want[ed] to hide behind FMLA." *Id.* at 17.

These alleged statements meet all four factors that distinguish direct evidence of discrimination from "stray remarks." First, they relate directly to Plaintiff's exercise of FMLA rights. Plaintiff was entitled to request and take FMLA leave, and the comments at issue expressly disparaged that entitlement, accusing Plaintiff of "pretending to rights like FMLA" and "hid[ing] behind FMLA." (Doc. 38 at 16–17). Second, the alleged statements were proximate in time to the adverse employment action, namely Plaintiff's termination. Third, the statements were made by a person with authority over Plaintiff's termination. The Fifth Circuit has stated "[i]f the employee can demonstrate that others had influence or leverage over the official decisionmaker . . . it is proper to impute their discriminatory attitudes to the formal decisionmaker." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000). Plaintiff alleges Gabir, his supervisor, both had authority over his termination and, at minimum, exercised influence over it. (Doc. 38 at 15–17, 22–23, 32). According to the Second Amended Complaint, HR directed Plaintiff to speak with Gabir; Gabir told Plaintiff he was terminating his position;

Gabir expressly linked Plaintiff's termination to his FMLA leave; and Gabir "terminated Plaintiff altogether as a Walmart employee." *See id.* Finally, the statements referred to Plaintiff's termination, including direct threats that his employment would end because of his FMLA leave. *See id.* Taken together, all four factors are met in this case. Thus, the Court concludes Plaintiff has alleged direct evidence of retaliation sufficient to survive Defendant's Motion to Dismiss.

Accordingly, the Court **RECOMMENDS** Defendant's Motion to Dismiss be **DENIED** as to Plaintiff's FMLA retaliation claim. (Doc. 39).

### 3. Plaintiff's Discrimination Claims Under Title VII and § 1981

Although Defendant initially asserts Plaintiff's Title VII claims fail because (1) they were not timely asserted and (2) Plaintiff has not alleged that he was treated less favorably than similarly situated employees outside his protected class (Doc. 39 at 2), the Motion itself only addresses the timeliness issue (Doc. 39 at 9). Nevertheless, the Supreme Court has made it clear that a plaintiff in an employment discrimination case need not plead a *prima facie* case in his complaint. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002). Rather, at the pleading stage, Plaintiff need only "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make [his] case plausible." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019). The Fifth Circuit has identified the "two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) 'an adverse employment action,' (2) taken against a plaintiff 'because of her protected status.'" *Id.* at 767. With respect to timeliness, Defendant contends Plaintiff's Title VII claim is barred because it was not filed within ninety days of Plaintiff's receipt of the Notice of the Right to Sue. *Id.* However, as explained above, the Court concludes Plaintiff's filing was timely. Accordingly, Defendant's Motion to Dismiss the Title VII claim should be **DENIED**.

Further, while Courts analyze employment discrimination claims brought under § 1981 using the same standards applicable to Title VII claims, *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002), administrative remedies need not be pursued or exhausted for claims under § 1981. *CBOCS v. Humphries*, 553 U.S. 442, 454–55 (2008). Thus, Defendant's Motion fails to address Plaintiff's § 1981 claim.

Accordingly, the Court **RECOMMENDS** Defendant's Motion to Dismiss be **DENIED** as to Plaintiff's claims of Title VII and Section 1981 discrimination. (Doc. 39).

### 4. Plaintiff's Promissory Estoppel Claim

In its Motion, Defendant argues Plaintiff's promissory estoppel claim should be dismissed. (Doc. 39 at 10). "Under Texas law, '[t]he requisites of promissory estoppel are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment.'" *MetroplexCore, LLC. v. Parsons Transp., Inc.*, 743 F.3d 964, 977 (5th Cir. 2014) (per curiam) (quoting *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)). Detrimental reliance on the promise must be "reasonable and justified." *Hinds v. Orix Cap. Mkts., LLC*, No. CIV.A. 302CV0239, 2003 WL 22132791, at *5 (N.D. Tex. Sept. 11, 2003).

Defendant argues dismissal is appropriate because Plaintiff's promissory estoppel claim fails to survive the basic pleading requirements. (Doc. 39 at 10). Specifically, Defendant contends to state a claim, Plaintiff must allege a "definite, unconditional promise." *Id.* Defendant argues the text message stating Plaintiff "should be getting [his] new job offer this week," along with an email assigning him a proposed schedule, is insufficient to establish a clear and definite promise of employment. *Id.* Plaintiff responds that Defendant improperly seeks to heighten the pleading standard and maintains his Second Amended Complaint adequately alleges all elements of promissory estoppel. (Doc 42 at 21).

The Court concludes Plaintiff has not pleaded a claim for promissory estoppel because his status as an at-will employee defeats the reliance element.[5] Courts have repeatedly held that an at-will employment relationship "does not provide any assurances about [the] employer's future conduct and is not a reasonable basis for reliance." *Olson v. Microsoft Corp.*, No. 25-CV-0774, 2025 WL 2664321, at *5 (N.D. Tex. Sept. 17, 2025); *see Vlasek v. Wal-Mart Stores, Inc.*, No. CIV.A. H-07-0386, 2008 WL 2937760, at *10 (S.D. Tex. July 22, 2008) ("A promise to provide employment-at-will does not provide a basis for detrimental reliance on continued employment, as a matter of law."); *Collins v. Allied Pharmacy Mgmt.*, 871 S.W.2d 929, 937 (Tex. App.—Houston [14th Dist.] 1994, no writ) (holding any reliance for at-will employment is unreasonable as a matter of law).

Although one Texas court permitted recovery where an employer induced an employee to quit an *existing* job in reliance on a promise of at-will employment, *Roberts v. Geosource Drilling Servs., Inc.*, 757 S.W.2d 48, 49 (Tex. App.—Houston [1st Dist.] 1988, no writ), subsequent cases have clarified the narrow reach of that exception. In *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 378–79 (Tex. App.—Houston [1st Dist.] 2007, no pet.), the court rejected a claim of promissory estoppel where the plaintiff's former position had already been eliminated, rather than abandoned in reliance on a new promise. Similarly, in *Vlasek*, the court rejected the claim because the employee identified no specific job opportunity she declined in reliance on continued employment at Walmart, and mere continuation in an at-will role does not constitute detrimental reliance. *Vlasek*, 2008 WL 2937760 at *10.

The same reasoning controls here. Plaintiff does not allege he resigned from his Pharmacy Manager position in reliance on Defendant's alleged promise of a relief pharmacist

---

5. Plaintiff never alleges a contractual term of employment, and because "the promissory-estoppel doctrine presumes no contract exists," his employment is presumed as-will. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 226 (Tex. 2002).

job; instead, Defendant had already informed him the Pharmacy Manager position was being terminated. (Doc. 38 at 23). Nor does the record reflect Plaintiff declined any specific job opportunity because of Defendant's alleged promise. At most, Plaintiff alleges he "stopped look[ing] for other jobs within Walmart," which is insufficient to show a material change in position. *Id.* at 34. Because Plaintiff cannot establish detrimental reliance, his promissory estoppel claim fails as a matter of law and should be dismissed.

Accordingly, the Court **RECOMMENDS** Defendant's Motion to Dismiss be **GRANTED** as to Plaintiff's promissory estoppel claim (Doc. 39), and the claim be **DISMISSED WITHOUT PREJUDICE**.

### C.  Motion to Dismiss Under Rule 9(b)

Defendant moves to dismiss under Rule 9(b) Plaintiff's claims of fraud and fraudulent inducement. (Doc. 39). When a plaintiff's claims are grounded in fraud, the plaintiff must satisfy the heightened pleading requirements of Rule 9(b), which provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). This heightened pleading standard applies to the fraud and fraudulent inducement claims Plaintiff asserts in this case. *See El Paso Disposal, LP v. Ecube Labs Co.*, 766 F. Supp. 3d 692, 703 (W.D. Tex. 2025) (holding all claims predicated on allegations of fraudulent conduct must meet Rule 9(b)'s requirements).

Rule 9(b)'s particularity requirement generally demands the complaint identify the "who, what, when, where, and how" of the allegedly fraudulent content. *See U.S. ex rel. Williams v.*

*Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005). That is, a plaintiff pleading fraud must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002) (quotations omitted); *see In re Lindsey*, 733 F. App'x 190, 192 (5th Cir. 2018) ("At a minimum, these rules require that a plaintiff allege the nature of the fraud, some details, a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants." (quotation omitted)). "What constitutes particularity will necessarily differ with the facts of each case." *Afshani v. Spirit SPE Portfolio 2006-1, LLC*, No. 21-10137, 2022 WL 964201, at *3 (5th Cir. Mar. 30, 2022) (quotation omitted). Nonetheless, Rule 9(b) sets a "high bar." *Colonial Oaks Assisted Living Lafayette, LLC v. Hannie Dev., Inc.*, 972 F.3d 684, 694 (5th Cir. 2020). Naked assertions devoid of further factual enhancement will not suffice. *See In re Lindsey*, 733 F. App'x at 192.

Defendant argues dismissal is appropriate because Plaintiff's fraud and fraudulent inducement claims still fail to satisfy Rule 9(b)'s heightened pleading standard. (Doc. 39 at 10). More specifically, Defendant contends Plaintiff's allegations that his supervisor sent him a text message indicating he "should be getting [a] new job offer this week" and then subsequently rescinding the job offer after sending Plaintiff a schedule "simply do not and cannot satisfy Rule 9(b)'s heightened pleading standard for fraud claims." *Id.* at 11. Plaintiff argues a "reasonable factfinder would find that [Defendant] made a false representation" when it told him he "had until February 2, 2024[,] to find another position . . . as [Defendant] knew it was engaging in a farce, and was acting with reckless disregard for the truth." (Doc. 38 at 35–36). Plaintiff's Response maintains the false representation upon which he relies to support his fraud claims are

his supervisor's statements he "had until February 2, 2024[,] to find another position" and that he "should be getting [his] new job offer." (Doc. 42 at 26).

The Court agrees Plaintiff failed to sufficiently plead a claim for fraud or fraudulent inducement. Plaintiff alleges Defendant first terminated him from his Pharmacy Manager position, then told him he had until February 2, 2024, to find another position or else be terminated altogether. (Doc. 38 at 16). Plaintiff further alleges that after he applied and interviewed for a Staff Pharmacist position, Defendant "concocted a subterfuge" by feigning an offer of that position only to rescind it at the last minute, thereby ensuring Plaintiff would not secure another position before the February 2nd deadline. *Id.* at 35. Although these allegations describe a sequence of events in some detail, they still fail to satisfy Rule 9(b). Plaintiff does not allege facts showing any specific representation was false when made. The allegation that Defendant "concocted a subterfuge" and "feigned" an offer reflects Plaintiff's characterization of events and speculation about Defendant's motives, not particularized factual allegations of fraud. *See Herrmann Holdings Ltd.*, 302 F.3d at 565 (explaining plaintiff must explain why the statement was fraudulent when made). That Defendant later rescinded a job offer or terminated Plaintiff's employment does not, without more, plausibly establish that the earlier statements were false at the time they were made. Plaintiff's repeated assertions Defendant acted under a "pretext," "engaged in a farce," or "concocted a subterfuge" are conclusory allegations of Defendant's malice, intent, or knowledge, not well-pleaded facts. Although "[Defendant's] malice, intent, or knowledge 'may be averred generally,'" Plaintiff must still "set forth specific facts that support an inference of fraud." *Colonial Oaks*, 972 F.3d at 689. Because Plaintiff does not provide this information, the Court would have to make guesses to fill in the blanks, but "Rule 9(b) does not allow the plaintiffs to force the defendants—or the court—to make such

assumptions." *Id.* at 694–95. Thus, even accepting Plaintiff's allegations as true, his claims for fraud and fraudulent inducement fail to meet Rule 9(b)'s heightened pleading standard and should be dismissed.

Accordingly, the Court **RECOMMENDS** Defendant's Motion to Dismiss be **GRANTED** as to Plaintiff's fraud and fraudulent inducement claims (Doc. 39), and the claims be **DISMISSED WITHOUT PREJUDICE**.

## IV.    RECOMMENDATION

In accordance with the above discussion, the Court **RECOMMENDS** Defendant's Motion to Dismiss be **GRANTED IN PART** and **DENIED IN PART**. (Doc. 39). Defendant's Motion should be **GRANTED** as to Plaintiff's claims of ADA discrimination, ADA retaliation, ADA associational discrimination, promissory estoppel, fraud, and fraudulent inducement and **DENIED** as to Plaintiff's claims of FMLA retaliation, race and national origin discrimination under Title VII, and discrimination under § 1981. (Doc. 39). The Court further **RECOMMENDS** Plaintiff's claims of ADA discrimination, ADA retaliation, ADA associational discrimination, promissory estoppel, fraud, and fraudulent inducement be **DISMISSED WITHOUT PREJUDICE**.

SIGNED this 8th day of October, 2025.

_____
RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party ***has not been served*** by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).